## GENERAL EXCHANGE INS. CORPORATION v. KELLY.

### No. 2163.

Court of Appeal of Louisiana. First Circuit.

Nov. 9, 1940.

Blanche, Hebert & Wilson, of Baton Rouge, for appellant.

Jack P. F. Gremillion, of Baton Rouge, for appellee.

## LE BLANC, Judge.

An accident between two automobiles, one belonging to Henry Henderson and the other to the defendant, William B. Kelly, on the morning of July 1, 1939, gave rise to this lawsuit. The plaintiff insurance company is the assignee or subrogee of the claim of Henry Henderson which amounts to the sum of $239.70 expended for repairs to his automobile which plaintiff had insured and which it had to pay. The accident happened at about 7 o'clock in the morning on the Green Well Springs Road, running east and west, at a point near the private driveway leading into Henderson's yard on the south side of the highway and about seven miles east of the City of Baton Rouge.

Plaintiff alleges in its petition that Henderson was driving his car from a private road into the Green Well Springs Road; that on approaching the said road he looked both ways to his right and left and see-ing no vehicle which would interfere with his safely entering, drove his automobile into the road proceeding in a westerly direction towards Baton Rouge; that after Henderson had driven some distance, the Ford Sedan, driven by William B. Kelly, also travelling west and going at an excessive rate of speed, ran into his car and collided with it in the rear. The defendant is charged with negligence in three particulars: (1) In not keeping a proper lookout, (2) in driving at an excessive rate of speed, and (3) in not keeping his car in position on the highway to avoid striking cars in front of him. In the alternative plaintiff pleads, in the event Henderson should be shown to have been guilty of any negligence, that Kelly had the last clear chance to avoid the accident.

Defendant, in his answer, admits the collision between the two cars but denies that it happened in the manner set out in plaintiff's petition. He avers that the accident was caused solely by Henderson's negligence in (1) running into the highway from a private driveway without warning and in failing to keep a proper lookout for passing cars upon entering and (2) in failing to avoid passing vehicles already on the highway. He avers in effect that he applied his brakes and did everything within his power to avoid a collision but Henderson drove his car from the driveway and cut in front of him with such swiftness that it was impossible to avoid striking his car and that he thus collided with it, the impact being to the right rear side. In the alternative he pleads contributory negligence on the part of Henderson as a bar to plaintiff's recovery.

After trial in the Court below there was judgment in favor of defendant dismissing plaintiff's suit at its costs, whereupon this appeal was taken.

The learned district judge assigned written reasons in which he fully analyzed the testimony and finally accepted the defendant's version of the accident from which it is made to appear that the Henderson car suddenly came into the highway ahead of his when he was only a few feet away and could not avoid striking it. He found this version to be more substantially correct than Henderson's account of how the accident happened and we might state at the outset that we find ourselves in thorough accord with the conclusion reached by him.

The trial judge found a statement given by Henderson and which appears

in the signed agreement of subrogation of his claim to the plaintiff of sufficient importance to command his attention at the very beginning of his consideration of the case. Counsel for plaintiff now contend that that statement is not properly before the Court because it was never introduced in evidence. As just stated, it is incorporated in and forms part of the subrogation agreement, the form of which was prepared by the plaintiff itself. The agreement was produced and offered in evidence by counsel for plaintiff, is duly marked filed by the Clerk of Court as of the same day on which the case was tried and is now found in the record. It is impossible in reading it not to read the statement contained in it and it must be considered as a whole.

In his statement Mr. Henderson says that he was leaving home around 7 o'clock that morning to go to work in Baton Rouge. That he pulled out of the long driveway along side of his house, stopped at the road and then started going west. The statement then continues as follows: "When I pulled out I was on the left-hand side of the road just about to get over to the right. All of a sudden a car came along from behind and collided with the rear end of my car. The other party made a statement to the Highway Police that he was near a culvert when he saw my car. This culvert is about fifty feet from my drive as shown on diagram attached. * * *" In giving this statement and signing the same with a declaration that it is made "under the penalties of perjury and of fraud" we believe that Mr. Henderson was giving his true account of how the accident happened. The facts as he related them therein coincide with those given in the version of Mr. Kelly who in his testimony goes into greater detail. Mr. Henderson was not questioned regarding the statement, and in weighing his testimony which is at variance with its contents, it cannot be ignored and set aside in order to accept the different story which he now relates.

The plaintiff now has Mr. Henderson and its other witnesses testifying that he had already entered the highway, taken his lane of travel on the right and had travelled west about forty feet from the entrance to his private driveway when his car was struck from the rear. But the testimony of defendant's witnesses as well as the physical facts contradict them. These witnesses all came upon the scene of the accident within ten to twenty minutes after it happened and saw the position of the respective automobiles in relation to the private, driveway entrance. Not one of them places the Henderson car further than from thirty to thirty-five feet west and the Kelly car as close as from ten to fifteen feet. Broken glass and other small debris indicating that place of impact on the highway was found at a distance not over ten feet west of the driveway. Besides, the damage to the Henderson car was to the rear right end demonstrating that the blow was not to the full rear but rather at an angle and thus further bearing out Kelly's testimony, supported by Henderson's statement, that the Henderson car had turned left into the highway right in front of the Kelly car and was not yet entirely facing west when it was hit on the rear right side by the Kelly car.

■ One of the defendant's witnesses to whose testimony the lower court gave much consideration was Martin Varnado, a trooper of the State Police who investigated the accident having reached the scene about ten or fifteen minutes after it happened. Counsel for plaintiff complain of the Court's ruling in refusing to strike this witness' testimony from the record because he referred to a report made by him which he refused to let Counsel examine. The witness explained that these reports which are made in all accident cases are official and not open to public inspection. Counsel made no further effort afterwards to have the witness submit the report. As we understand the matter, the witness merely referred to an official report he had himself prepared in order to refresh his memory with regard to certain details. This, he certainly had a right to do. Even so, however, the district judge later did restrict the testimony on certain details to what was the witness' recollection of the facts independently of the report.

■■ The testimony shows without dispute that there is a concrete culvert across the highway about fifty feet east of the entrance to Henderson's private driveway. Kelly testifies that he was about midway between these two points when the Henderson car emerged from the private driveway on to the road and turned to its left in front of him. Beyond the concrete culvert there is a thicket on a property line on the south of the highway which presents an obstruction to the full view of a person

driving west to a car coming out of the Henderson driveway. It is true, as Kelly admits, he was travelling at fifty miles per hour but he had the right to go that fast and also the right to rely on the duty of care which the law imposed on the driver of a car coming out of a private driveway to be on the lookout for cars coming from either direction before entering the highway. Mr. Henderson testifies that he complied with that duty but the preponderance of the testimony, both that of the witnesses and the physical facts, convinces us, as it did the district judge, that he did not.

Certainly there has been no manifest error pointed out in the judgment appealed from and it is accordingly affirmed at the costs of the appellant.